**AKRON CENTER FOR REPRODUCTIVE HEALTH, an Ohio corporation; Max Pierre Gaujean, M.D., individually and on behalf of his patients; Patty Poe, a minor, individually and on behalf of all other similarly situated persons, Plaintiffs–Appellees,**

v.

**Lynn SLABY, etc.; et al., Defendants,**

v.

**STATE OF OHIO, Intervenor–Appellant.**

No. 86–3664.

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1988.

Decided Aug. 12, 1988.

David J. Kovach, Asst. Atty. Gen., Cleveland, Ohio, Rita S. Eppler (argued) Asst. Atty. Gen., Columbus, Ohio, for intervenor-appellant.

Linda R. Sogg (argued), Thomas, Hine & Flory, Cleveland, Ohio, Bruce Campbell, ACLU of Ohio Foundation, Inc., Columbus, Ohio, Roger K. Evans, Planned Parenthood Fed. of America, Inc., New York City, for plaintiffs-appellees.

Robert R. Melnick, Youngstown, Ohio, for amicus curiae (Rutherford).

Before MARTIN, MILBURN and GUY, Circuit Judges.

MILBURN, Circuit Judge.

Intervenor-appellant State of Ohio appeals the judgment of the district court declaring Ohio Amended Substitute House Bill 319 (H.B. 319) unconstitutional. H.B. 319, which enacted Ohio Rev.Code §§ 2151.85 and 2505.073 and amended Ohio Rev.Code § 2919.12, requires parental notification by physicians who intend to perform abortions on unmarried, unemancipated women under the age of eighteen. For the reasons that follow, we affirm.

I.

On March 21, 1986, plaintiffs filed an action challenging the constitutionality of H.B. 319 (attached hereto as Appendix I) which requires that a physician who intends to perform an abortion on an unmarried, unemancipated minor must notify her parents unless one of several exceptions is present. Plaintiffs were the Akron Center for Reproductive Health, a facility which performs abortions on minors; Dr. Max Pierre Gaujean, a physician who performs abortions at the Akron Center; Patty Poe, an unmarried minor who believed she might be pregnant; and Rachel Roe, an unmarried minor living in the home of one of her parents with her two-year-old son. Roe was refused an abortion at the Akron Center because of the imminent operation of H.B. 319.

Defendants were Gary Rosen, City Prosecutor for the City of Akron; Lynn Slaby, Prosecuting Attorney for Summit County, Ohio; Anthony Celebrezze, Attorney General of the State of Ohio; and Richard Celeste, Governor of the State of Ohio. Only the State of Ohio, as intervenor, is participating in this appeal.[1]

STATUTORY PROVISIONS

Section 2919.12 provides that no person shall knowingly perform or induce an abortion upon an unemancipated minor unless one of the following circumstances is present:

(1) the person performing the abortion has given at least twenty-four hours actual notice, in person or by telephone, to the parent or guardian of the minor;

(2) one of the woman's parents or her guardian has consented in writing;

(3) a juvenile court has issued an order authorizing the minor to proceed with the abortion in the absence of parental notification; or

(4) the juvenile court has constructively authorized the minor to consent to the abortion through its inaction.

In lieu of parental notification, the statute further provides that notice may be given to a specified sibling, stepparent or grandparent in a limited range of circumstances. The statute also provides that, if the person required to be notified cannot be reached after reasonable effort, the person providing the abortion must give at least forty-eight hours constructive notice by both regular and certified mail to that person. If the person to whom notice is re-

---

1. In the proceedings below, plaintiff Patty Poe was dismissed for lack of standing. Defendants Celebrezze and Celeste were dismissed as defendants. After judgment was entered against the remaining defendants, defendant Slaby appealed. However, on November 4, 1986, Slaby voluntarily dismissed his appeal. Plaintiffs then moved for dismissal on the ground that no defendant bound by the district court's judgment remained in the proceedings. In an order dated April 28, 1987, this court denied plaintiffs' motion. Although plaintiffs seek reexamination of that ruling, it is the law of the case, and we are bound by it. See SEC v. Youmans, 729 F.2d 413 (6th Cir.), cert. denied, 469 U.S. 1034, 105 S.Ct. 507, 83 L.Ed.2d 398 (1984).

quired to be given cannot be reached within the forty-eight hour period, the abortion may proceed.

If the person required to be notified under the statute clearly and unequivocally expresses that he or she does not wish to consult with the pregnant minor prior to her abortion, then the abortion may proceed without further delay. For purposes of the statute, there exists a rebuttable presumption that a woman who is unmarried and under the age of eighteen is unemancipated.

The legislation provides that an individual who violates this section for the first time is guilty of a misdemeanor of the first degree, and that a second violation is a felony of the fourth degree. Any individual violating the statute is liable to the pregnant minor and her parent, guardian, or custodian for civil compensatory and exemplary damages. Administrative proceedings may also be instituted for noncompliance. Ohio Rev.Code § 4731.22(C).

It is an affirmative defense to liability under the statute if the pregnant minor has provided false information about her age, marital status, emancipation, or name and/or address of the person required to receive notice. This defense may be asserted only if the person providing the abortion "did not otherwise have reasonable cause to believe" the information was false. It is also an affirmative defense that compliance was not possible due to an immediate risk to the life or health of the pregnant woman.

The legislation also establishes a procedure through which notification to a parent, guardian, or custodian may be bypassed. This bypass procedure provides that a woman who wishes to have an abortion without notification of her parent, guardian, or custodian may file a complaint in the juvenile court of the county in which she has a residence, in any bordering county, or in the juvenile court of the county in which the facility which would perform the abortion is located. The complaint must contain a statement that the complainant is pregnant, unmarried, unemancipated, under the age of eighteen, and that she wishes to have an abortion without the notification of her parents. The complaint must further contain either or both of the following allegations:

(a) that the complainant is sufficiently mature and well enough informed to intelligently decide whether to have an abortion without notification of her parents;

(b) that one or both of her parents, her guardian, or custodian has engaged in a pattern of physical, sexual, or emotional abuse against her, or that the notification of her parents is otherwise not in her best interests.

The statute further provides that the juvenile court will only rule upon the allegation explicitly pleaded in the complaint. Thus, if the complainant alleges only that she is sufficiently mature and well enough informed to make the decision alone, and the court declines to accept this contention, it must dismiss the complaint without going on to consider whether notification is otherwise not in the complainant's best interests. Only if the complainant makes both allegations can both be considered. The complainant must prove the allegations in her complaint by clear and convincing evidence, and counsel must be appointed to represent the complainant at the hearing in juvenile court.

The statute provides for an expedited procedure to be followed in the bypass proceeding. The hearing must be held not later than the fifth business day after the complaint is filed, and the court must enter judgment immediately after the hearing is concluded. However, if the hearing is not held by the fifth business day after the complaint is filed, the failure to hold the hearing shall be considered a constructive order ("pocket authorization") permitting the complainant to consent to the performance of the abortion without the notification of her parent.

If the court dismisses the complaint, it shall immediately notify the complainant of her right of appeal. Within four days after a notice of appeal is filed, the appeal must be docketed. The appellant shall file her brief within four days after the appeal is docketed, and unless she waives oral argu-

ment, the court of appeals shall hear oral argument within five days after the appeal is docketed. Judgment must be entered immediately after the hearing.

Upon motion of the appellant and for good cause shown, the court of appeals may shorten or extend any of the maximum times set forth in the statute. If the judgment is not entered within five days after the appeal is docketed, the failure to enter the judgment shall. be considered a constructive order authorizing the appellant to consent to the performance of the abortion without notice to her parent.[2]

The statute further provides that each hearing must be conducted in a manner that will preserve the anonymity of the complainant. All records must be kept confidential, and the court shall not notify the complainant's parent or guardian that she is pregnant or that she wishes to have an abortion.

### DISTRICT COURT'S CONCLUSIONS

On April 22, 1986, the district court filed its memorandum and order enjoining enforcement of the statute. *Akron Center for Reproductive Health v. Rosen*, 633 F.Supp. 1123 (N.D.Ohio 1986). After disposing of procedural arguments not relevant to the pending appeal, the district court proceeded to the merits of the constitutional claims presented by the plaintiffs.

The district court recognized that the constitution is not violated by a statute which requires notice to the parents of immature, dependent minors seeking abortions. However, the district court went on to conclude that a bypass procedure is constitutionally mandated in order that notification is not required to be given to the parents of mature minors or minors whose best interests do not include parental intervention. The district court concluded that the bypass procedure contained in the Ohio statute was constitutionally deficient for several reasons; *viz.,* the *"constructive order" provision*, which allows an abortion to be performed without parental notification when the court fails to act in a timely

manner, was unconstitutionally vague; the statutory requirement that the *notice be given by the physician,* as opposed to some other responsible individual, unduly burdened the minor woman's right of access to an abortion; and the *"clear and convincing evidence"* standard of proof constituted an impermissible burden on the right of access to an abortion.

Likewise, the *pleading requirements* contained in the Ohio legislation were found defective because they have the effect of precluding juvenile court judges from making all findings of fact required by controlling precedent. The district court further found that the *length of time required* to complete the bypass procedure was impermissibly long and that the statute's confidentiality provision was inadequate to protect the rights of the minor complainants. However, the district court rejected the plaintiffs' arguments that the *twenty-four hour postnotification waiting period* constituted an impermissible burden on the right to seek an abortion. Finally, the district court rejected the argument that each complainant must be provided with *court-appointed counsel on appeal.*

In summary, the district court concluded:

[T]here are numerous constitutional defects with the waiver procedure established in section 2151.85 and section 2505.73. To repeat, the provisions (1) establishing constructive authorization; (2) requiring the physician to perform the notice; (3) mandating that a minor prove her maturity or that notification is not in her best interests by "clear and convincing evidence"; and (4) preventing juvenile court judges from making both findings required by *Bellotti II* in all cases, are unconstitutional. In addition, the waiver procedure unconstitutionally fails to ensure (5a) expedition and (5b) confidentiality.

633 F.Supp. at 1144. Because the district court concluded that the unconstitutional provisions could not be severed from the

---

**2.** The term "days" excludes Saturdays, Sundays and legal holidays, as the respective "period[s]" of time prescribed or allowed [are] less than seven days." Ohio R.App.P. 14(A).

remaining portions of the statute, enforcement of the statute was enjoined in its entirety.[3] The State of Ohio appeals, arguing that the parental notification legislation enacted by the Ohio legislature does not unduly burden a minor woman's constitutional right to seek an abortion.

## II.

### A.

The Supreme Court has recognized that a woman possesses a fundamental constitutional right to seek an abortion. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. 2d 147 (1973). At the outset, the Court appeared hostile to the notion that any party other than the expectant mother and her physician should be a party to the abortion decision. *See Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

Nevertheless, the Supreme Court has recognized that, under certain circumstances, parental intervention is appropriate when the abortion decision is made by a minor.

> Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights. The Court indeed, however, long has recognized that the State has somewhat broader authority to regulate the activities of children than of adults.

*Planned Parenthood of Cent. Missouri v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976) (citations omitted). Thus, a state may restrict a minor's constitutional right to an abortion if such restriction is supported by a significant state interest. *Id.* at 75, 96 S.Ct. at 2843.

The Court has continued to struggle with the extent to which parental intervention into a minor's abortion decision is constitutionally permissible. The statute at issue in *Danforth* required parental consent for an abortion in all cases in which the pregnant woman was unmarried, and under the age of eighteen, unless the abortion was medically necessary to preserve the life of the mother. 428 U.S. at 72, 96 S.Ct. at 2842. The Court struck down the statute, concluding that "the State does not have the constitutional authority to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding the consent." *Id.* at 74, 96 S.Ct. at 2843.

The Court cautioned, however, that its holding was not tantamount to a declaration that an unmarried minor has an absolute right to receive an abortion without parental intervention.

> We emphasize that our holding that [the Missouri consent statute] is invalid does not suggest that every minor, regardless of age or maturity, may give effective consent for termination of her pregnancy. The fault with [the statute] is that it imposes a special-consent provision, exercisable by a person other than the woman and her physician, as a prerequisite to a minor's termination of her pregnancy and does so without a sufficient justification for the restriction.

428 U.S. at 75, 96 S.Ct. at 2844. The Court's decision clearly emphasizes the premise that the Missouri statute was constitutionally deficient because it gave a third party an absolute right to veto the decision of a minor and her physician that an abortion was appropriate, regardless of the reason for that veto.

The significance of a parental veto was reemphasized by the Court in the companion case of *Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) ("*Bellotti I*"), decided the same day as *Danforth*. In *Bellotti I*, the Court was asked to consider the constitutionality of a Massachusetts statute containing the following provision:

> and the absence of a severability clause preclude severance of those portions of the statute declared unconstitutional.

---

**3.** Because we affirm the district court's judgment as to each challenged element of the Ohio statute, we agree that the impact of our decision

If the mother is less than eighteen years of age and has not married, the consent of both the mother and her parents is required [before an abortion will be performed]. If one or both of the mother's parents refuse such consent, consent may be obtained by order of a judge of the Superior Court for good cause shown, after such hearing as he deems necessary. Such hearing will not require the appointment of a guardian for the mother.

428 U.S. at 134–35, 96 S.Ct. at 2860. The Supreme Court refused to address the merits of the case, concluding that abstention was appropriate in order to provide the Massachusetts Supreme Judicial Court with an opportunity to construe the statute in a manner consistent with *Danforth.*

Three years later, the Court was required to answer the question upon which it deferred decision in *Bellotti I.* In *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*"Bellotti II"*), the Supreme Court considered whether the Massachusetts statute as construed by the Massachusetts Supreme Judicial Court impermissibly burdened the right of a minor to obtain an abortion.

In construing the Massachusetts statute, the Massachusetts Supreme Judicial Court concluded that it required parents to consider only the best interests of their daughter in determining whether she should be permitted to have an abortion. The statutory provision allowing a minor to seek judicial consent required consent to be granted if found to be in the minor's best interests. In considering whether to grant consent notwithstanding parental objections, the judge was required to disregard all considerations not based exclusively upon the minor's best interests. Even if the judge in a judicial consent proceeding concluded that the minor was capable of making an informed decision regarding abortion (*i.e.,* that the minor was "mature"), the judge was entitled to withhold consent if he determined that, notwithstanding her maturity, the best interests of the minor would not be served by an abortion.

Armed with this construction, the Court proceeded to consider whether the Massachusetts statute would survive constitutional challenge. The plurality opinion, written by Justice Powell, recognized once again that a minor is entitled to constitutional rights, although those rights are not necessarily coequal with the rights of an adult. Three reasons were said to justify this conclusion: the peculiar vulnerability of children, their inability to make critical decisions in an informed, mature manner, and the importance of the parental role in child rearing. *Id.* at 634, 99 S.Ct. at 3043.

The plurality further recognized that, in enacting its statutory provision, Massachusetts had attempted to reconcile the constitutional right recognized in *Roe* with the interest of the State in encouraging an unmarried pregnant minor to seek the advice of her parents in making an abortion decision. Thus, the relevant inquiry was whether the Massachusetts statute provided "for parental notice and consent in a manner that does not unduly burden the right to seek an abortion." 443 U.S. at 640, 99 S.Ct. at 3046. In making this determination, the plurality opinion emphasized:

> The abortion decision differs in important ways from other decisions that may be made during minority. The need to preserve the constitutional right and the unique nature of the abortion decision, especially when made by a minor, require a state to act with particular sensitivity when it legislates to foster parental involvement in this matter.

*Id.* at 642, 99 S.Ct. at 3047.

The starting place for the analysis was the Court's earlier decision in *Danforth.* After reemphasizing that the State may not allow a parent or guardian an absolute veto over a minor's abortion decision, the plurality concluded that if the State should decide to require a pregnant minor to obtain parental consent, it is also required to provide an alternative authorization procedure.

> A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in

consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests. The proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained. In sum, the procedure must ensure that the provision requiring parental consent does not in fact amount to the "absolute, and possibly arbitrary, veto" that was found impermissible in *Danforth.*

443 U.S. at 643–44, 99 S.Ct. at 3048 (footnote omitted).

The plurality concluded that the Massachusetts statute was constitutionally deficient for two reasons. First, the statute required parents to be notified of any attempt by the minor to receive judicial consent to have an abortion. The Court struck down this provision after concluding that every minor must be given the opportunity to go directly to court without first consulting or notifying her parents.

The second constitutional deficiency identified by the plurality was that the statute allowed a state court judge to refuse consent to a mature minor if he concluded that the abortion was not in her best interests. The plurality concluded that once a minor has established her maturity, a court is powerless to withhold authorization even though it may believe the procedure is not in the minor's best interests.

[I]f the minor satisfies a court that she has attained sufficient maturity to make a fully informed decision, she then is entitled to make her abortion decision independently. [Thus, the State of Massachusetts] cannot constitutionally permit judicial disregard of the abortion decision of a minor who has been determined to be mature and fully competent to assess the implications of the choice she has made.

*Id.* at 650, 99 S.Ct. at 3052 (footnote omitted).

It is important to note that Justice Powell's opinion in *Bellotti II* received the votes of only four justices. Four other justices, concurring in the judgment, concluded that the statute was constitutionally deficient under *Danforth.* "[N]o minor in Massachusetts, no matter how mature and capable of informed decisionmaking, may receive an abortion without the consent of either both her parents or a superior court judge. In every instance, the minor's decision to secure an abortion is subject to an absolute third-party veto." *Bellotti II,* 443 U.S. at 653–54, 99 S.Ct. at 3053 (Stevens, J., concurring in the judgment). Because an absolute third-party veto was found unconstitutional in *Danforth,* the four concurring justices concluded that this narrower rationale should be utilized to strike down the Massachusetts statute. Although Justice Powell's opinion in *Bellotti II* is only a plurality, it has become the standard by which parental intervention statutes are analyzed. See *City of Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) ("*Akron I*").

The Supreme Court first considered the constitutionality of a parental notification (as opposed to a parental consent) statute in *H.L. v. Matheson,* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981). At issue in *Matheson* was a Utah statute which required the physician to notify, if possible, the parents of a minor upon whom an abortion was to be performed. The Court concluded that neither the individual plaintiff, nor any of the members of the class she represented, alleged that they were mature enough to make the abortion decision independently or that parental notification was not in their best interests. Accordingly, the only issue before the Court was whether a mere notification requirement violated the constitutional rights of an immature dependent minor. The Court held that it did not.

The Supreme Court once again considered the constitutionality of a parental intervention municipal ordinance in *Akron I,* 462 U.S. at 416, 103 S.Ct. at 2485. In *Akron I,* the Court affirmed in part and

reversed in part the judgment of this court in *Akron Center for Reproductive Health v. City of Akron,* 651 F.2d 1198 (6th Cir. 1981).

Under consideration in *Akron I* were two provisions of an Akron ordinance regarding parental notice and consent. Section 1870.-05(A) was a parental notification requirement which provided that no physician could perform an abortion on an unmarried pregnant woman under the age of eighteen without first having given twenty-four hours actual notice to one of her parents, or if the parent could not be reached after reasonable effort, seventy-two hours constructive notice by certified mail to the last known address of the parent. Section 1870.05(B) was a parental consent provision prohibiting abortion upon a woman under the age of fifteen without the informed written consent of one of her parents.

This court struck down section 1870.-05(B), the parental consent provision, on the authority of *Danforth.* We concluded that, because the ordinance provided a blanket veto over the minor's decision to have an abortion, it could not withstand constitutional challenge.

With regard to the notification provisions contained in section 1870.05(A), we concluded that, under *Matheson, supra,* a parental notification statute is valid insofar as it applies to immature minors or minors who are unable to establish that their best interests are not served by parental intervention. Because none of the plaintiffs before this court were mature or emancipated minors or minors claiming that notification would not be in their best interests, we refused to find section 1870.05(A) facially unconstitutional.

The Supreme Court affirmed this court's determination that the parental consent requirement for minors under fifteen was unconstitutional. *Akron I,* 462 U.S. at 441–42, 103 S.Ct. at 2498–99. Because the statute did not create an opportunity for case-by-case evaluation of maturity of pregnant minors, the statute could not withstand scrutiny under *Bellotti II.* The Supreme Court did not consider the constitutionality of the parental notification provision for women under the age of eighteen. 462 U.S. at 439 n. 29, 103 S.Ct. at 2497 n. 29. Thus, the provision most like the one to be considered in the present case was not considered by the Supreme Court in *Akron I.*

In *Planned Parenthood Assoc. of Kansas City v. Ashcroft,* 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983), a sharply divided court upheld a parental consent statute. Justice Powell and Chief Justice Burger concluded that because the statute contained a bypass procedure which could be construed consistently with *Bellotti II,* the statute was constitutionally adequate. Dissenting Justices O'Connor, White, and Rehnquist concluded that the consent statute was constitutional because it imposed no undue burden on the minor's decision to have an abortion. Justices Blackmun, Brennan, Marshall, and Stevens concluded that the statute on its face gave either a minor's parents or a judge an absolute veto over the abortion decision and thus was unconstitutional under *Danforth.* Although the parental consent provision at issue in *Ashcroft* was upheld, the precise rationale for the determination is less than clear.

The issues in the present case are significantly different from those considered in the governing Supreme Court precedent. Unlike the consent provisions at issue in *Danforth, Bellotti II, Akron I,* and *Ashcroft,* the statute under consideration in the present case requires only parental notification. Thus, the threat of an absolute veto is arguably absent. *But see Indiana Planned Parenthood Affiliates Assoc. v. Pearson,* 716 F.2d 1127, 1132 (7th Cir.1983) ("parental involvement brought about by either consent or notification statutes may result in similar efforts by parents to block the abortion").

Likewise, this case is not governed by the Supreme Court's decision in *Matheson,* as the plaintiffs in the present case have alleged that they are mature, and that parental notification is not in their best interests. Thus, the precise issue which a majority of the Court in *Matheson* declined to consider is now before us. Specifically, we

must now consider whether a judicial by-pass proceeding is mandated when the statute at issue requires only parental notification. We must also consider whether *Bellotti II* presents the appropriate framework for such a bypass proceeding, and, if so, whether the Ohio statute before us complies with the mandate of *Bellotti II.*

In *Zbaraz v. Hartigan,* 763 F.2d 1532 (7th Cir.1985), the Seventh Circuit was presented with a challenge to an Illinois statute requiring that parents be notified of a minor's decision to have an abortion. Relying on its earlier decision in *Pearson,* 716 F.2d at 1127, the court held that a parental notification statute could withstand constitutional scrutiny only if it provided a bypass procedure consistent with the Supreme Court's decision in *Bellotti II.* This result is entirely consistent with the Supreme Court's observation in *Akron I* that a parental notification requirement would be unconstitutional in the case of a mature minor. 462 U.S. at 441 n. 31, 103 S.Ct. at 2498 n. 31.[4]

*Hartigan* was affirmed by an equally divided Supreme Court in a memorandum decision entered on December 14, 1987. *Hartigan v. Zbaraz,* — U.S. —, 108 S.Ct. 479, 98 L.Ed.2d 478 (1987). This disposition leaves "the principle of law presented by the case ... unsettled." *Laird v. Tatum,* 409 U.S. 824, 838, 93 S.Ct. 7, 15, 34 L.Ed.2d 50 (1972) (memorandum of Rehnquist, J.); *see also Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 73 n. 8, 97 S.Ct. 2264, 2271 n. 8, 53 L.Ed.2d 113 (1977).

▮ Nevertheless, we conclude that the state possesses an interest sufficient to justify the imposition of a parental notification requirement when an immature, dependent minor seeks an abortion. *Matheson,* 450 U.S. at 413, 101 S.Ct. at 1173. Consistent with *Hartigan,* we further conclude that such a requirement cannot be supported in the case of a mature minor or a minor whose best interests do not include parental notification of the abortion deci-

sion. Accordingly, we hold that a parental notification statute must provide a bypass procedure that is consistent with the dictates of *Bellotti II.* We further conclude that the bypass procedure established by Amended Substitute House Bill 319 does not comply with the standards established in *Bellotti II* and its progeny, and we therefore affirm the judgment of the district court enjoining enforcement of the statute in its entirety.

### III.

The district court found several distinct aspects of the Ohio statute to be constitutionally deficient. They will be discussed seriatim.

### A. *Requirement that the Physician Effectuate Notification*

▮ The Ohio statute provides that the person who will perform the abortion must notify the minor's parent of her decision. The district court held that this provision unduly burdens a minor's right to seek an abortion, and we agree.

This court decided a similar issue in *Akron I,* in which we struck down a statutory provision requiring the attending physician to perform preabortion counseling.

> [T]he practice of all three plaintiff clinics has been for the counseling to be conducted by persons other than the doctor who performs the abortion. In the absence of a showing that the state's compelling interest in maternal health would be served by a requirement that such counseling be done by the attending physician, this section is invalid.

651 F.2d at 1207. The Supreme Court upheld this determination.

> We are not convinced ... that there is as vital a state need for insisting that the physician performing the abortion, or for that matter any physician, personally counsel the patient in the absence of a request. The State's interest is in ensuring that the woman's consent is informed

4. This observation was made in the context of the Supreme Court's conclusion that abstention was inappropriate because the parental consent statute at issue was not reasonably susceptible of an interpretation rendering it consistent with *Bellotti II. See Pearson,* 716 F.2d at 1132 n. 2.

and unpressured; the critical factor is whether she obtains the necessary information and counseling from a qualified person, not the identity of the person from whom she obtains it.... [W]e believe that it is unreasonable for a state to insist that only a physician is competent to provide the information and counseling relevant to the informed consent.

462 U.S. at 448–49, 103 S.Ct. at 2502 (footnote omitted).

Similarly, in the present case, the state's interest is in insuring that immature, unemancipated minors or minors whose best interests require notification have an adequate opportunity for parental intervention. The state has made no showing that this interest is advanced by requiring the attending physician, as opposed to another qualified, responsible person, to effectuate notification. Under these circumstances, we conclude that the requirement that the physician effectuate the notification constitutes an undue burden upon the minor plaintiff's right to seek an abortion.

### B. *Pleading Requirement*

█ As discussed above, *Bellotti II* requires that a bypass procedure must be incorporated in a parental intervention statute in order that minors who are mature or minors whose best interests do not include parental intervention may avoid the intervention requirement. The State of Ohio has developed a pleading requirement which governs the manner in which this determination is made.

A minor who wishes to initiate a bypass proceeding may choose one of three complaint forms. Complaint Form A contains the statement that "complainant alleges that she is sufficiently mature and well enough informed to intelligently decide whether or not to terminate the pregnancy by abortion." J.A. at 149. Complaint Form B contains the allegation that notification of the complainant's parent or guardian would not be in her best interests. J.A. at 151. Complaint Form C contains both allegations.

If the complainant files Complaint Form A, the juvenile court considers only the issue of maturity. If the juvenile court is unable to conclude that the complainant is sufficiently mature to make the decision without notifying her parents, the court will dismiss the complaint without otherwise considering whether notifying the parent is in the minor's best interests. Similarly, if the complainant files Complaint Form B, the court will consider only the issue of whether terminating the pregnancy without parental notification is in the minor's best interests, and will not consider the issue of whether the complainant is mature enough to make the decision without parental intervention. Only if the complainant files Form C is the court permitted to consider both Form A and Form B issues under the framework created by *Bellotti II.*

No statute imposing or construing a similar pleading requirement in the abortion context has been cited by the parties or discovered in the course of our own research. Nevertheless, we believe that this requirement burdens the minor's right to receive an abortion by increasing the risk that she will be deprived of an effective opportunity to establish that she is entitled to proceed with an abortion in the absence of parental intervention. Because the State of Ohio has offered no legitimate reason for imposing the pleading requirement, we agree with the district court that this provision cannot withstand constitutional scrutiny.

In *Bellotti II,* Justice Powell indicated that a minor in a bypass proceeding is entitled to show either that she is mature enough to make the abortion decision alone or that parental intervention is not in her best interests. If the complainant fails to satisfy the court that she is sufficiently mature, "she must be permitted to show that an abortion nevertheless would be in her best interests." 443 U.S. at 647, 99 S.Ct. at 3050. Obviously, the complainant is not in a position to determine whether the juvenile court will be persuaded as to her maturity until long past the pleading stage.

Moreover, the State of Ohio has presented no legitimate justification for imposing

its pleading requirement which, in our view, is a "procedural trap." Indeed, it advances the absurd contention that "[a]ny minor claiming to be mature and well enough informed to independently make such an important decision as an abortion should also be mature enough to file her complaint under [the appropriate subsection]." State of Ohio's Brief at 43. We believe that this attempt to justify the statute's procedural maze cannot withstand even the most cursory examination. Accordingly, we affirm the district court's conclusion that the pleading requirement established by section 2151.85(C) constitutes an undue burden upon the right to an abortion.

## C. *Standard of Proof*

■ The Ohio statute requires the minor complainant to establish that she is mature or that notification is not in her best interests by clear and convincing evidence. The district court concluded that this standard imposed an undue burden upon the minor's right to seek an abortion.

The appropriate standard of proof to be utilized in a proceeding of this nature is a question of first impression. However, the Supreme Court has carefully articulated general rules to be considered in assessing the constitutionality of the standard of proof in a proceeding which could result in the deprivation of a protected liberty or property interest.

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact finding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979) (quoting *In Re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)).

In considering whether the standard of proof utilized in a given proceeding complies with due process, a court must consider three factors: "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing government interest supporting use of the challenged procedure." *Santosky v. Kramer,* 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982); *see also Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

In the present case, the mature minor's interest in exercising her constitutional right to proceed with an abortion without parental intervention is substantial. As discussed above, a woman's right to obtain a first trimester abortion is a fundamental one to be exercised by the pregnant woman upon the advice of her attending physician. *Roe,* 410 U.S. at 164, 93 S.Ct. at 732. Even when the pregnant woman is a minor, intervention may be justified only upon the showing of a substantial state interest. *Danforth,* 428 U.S. at 73, 96 S.Ct. at 2843; *Pearson,* 716 F.2d at 1133. The uniquely private and personal nature of this decision has been consistently recognized by the Supreme Court. *See, e.g., Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 764–68, 106 S.Ct. 2169, 2181–82, 90 L.Ed.2d 779 (1986).

To support its requirement of the heightened standard of proof, the State of Ohio asserts interests in the facilitation of parental involvement in child rearing. *See Bellotti II,* 443 U.S. at 638, 99 S.Ct. at 3045. However, the State of Ohio's argument misperceives the purpose of the bypass requirement. As plaintiffs correctly argue, the bypass procedure is not designed to facilitate parental involvement. Rather, it is designed to ensure that a minor who is sufficiently mature or whose best interests do not include parental notification is free to exercise her fundamental right to seek an abortion without the burden imposed by parental intervention. The State's interests in facilitating parental involvement may be legitimately vindicated only *after* a determination that the minor is

immature or that her best interests are not served by parental notification. *See Hartigan,* 763 F.2d at 1532.

Thus, the only possible interest that the State may assert in formulating the specific requirements for the bypass proceeding is to ensure that the proceeding is fair and yields a reliable result. The creation of such a procedure will allow the mature minor to proceed without parental intervention, thus preserving the privacy that is the essence of this fundamental right. *See Thornburgh,* 476 U.S. at 764–68, 106 S.Ct. at 2181–82. At the same time, a fair and reliable procedure permits the State to vindicate its interests in ensuring that minors who are not mature do not proceed with such an important decision in the absence of parental consultation.

Having so identified the competing interests, we conclude that the risk of erroneous deprivation of the mature minor's constitutional right to proceed without parental intervention is significantly increased by the imposition of the clear and convincing standard of proof. Our conclusion in this regard is bolstered by the Supreme Court's observation that the clear and convincing standard of proof has generally been employed "to preserve fundamental fairness in a variety of *government-initiated* proceedings that threaten the individual involved with 'a significant deprivation of liberty' or 'stigma.'" *Santosky,* 455 U.S. at 756, 102 S.Ct. at 1396 (quoting *Addington,* 441 U.S. at 425, 99 S.Ct. at 1809) (emphasis supplied). In the present case, the Ohio statute has the effect of placing the primary allocation of the risk of error upon the minor complainant, the precise individual whose fundamental liberty interest is at stake. We agree with the district court that the imposition of this heightened standard of proof unduly burdens the minor plaintiff's right to seek an abortion,

and thus cannot withstand constitutional scrutiny.[5]

### D. *Confidentiality*

■ Justice Powell's opinion in *Bellotti II* requires that the bypass procedures contained in a parental intervention statute "must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity...." 443 U.S. at 644, 99 S.Ct. at 3048. In the present case, the district court held that the Ohio statute fails to ensure the requisite degree of privacy. We agree. Section 2151.85(F) provides in relevant part:

> Each hearing under this section shall be conducted in a manner that will preserve the anonymity of the complainant. The complaint and all other papers and records that pertain to an action commenced under this section shall be kept confidential and are not public records under section 149.43 of the revised code.

Section 2505.073(B) provides:

> All proceedings [on appeal from the denial of a judicial bypass] shall be conducted in a manner that will preserve the anonymity of the appellant on appeal. All papers and records that pertain to an appeal under this section shall be kept confidential and not public records under section 149.43 of the revised code.

The complaint form instructs the minor that she is entitled to proceed under a pseudonym, although she must sign her real name and give an address where the court can contact her throughout the bypass proceeding unless she is represented by an attorney.

"The issue in this case, whether the statute's provisions specifically provide for, and thus assure, anonymity during a waiver of notice hearing, has received little attention." *Hartigan,* 763 F.2d at 1542.

---

**5.** The State of Ohio also argues that the ex parte nature of the bypass proceeding mandates imposition of the clear and convincing standard of proof. According to the State, the imposition of a lesser standard would command an order in the minor's favor merely by the filing of a complaint and the holding of a hearing. We reject this argument, as it fails to take into consideration the Supreme Court's admonition that a minor in a bypass proceeding must *convince* the juvenile court that she is sufficiently mature or that parental intervention is not in her best interests. Plaintiffs do not argue that the juvenile court in a bypass proceeding is required to act as a mere "rubber stamp" of the minor's decision to abort, and we would not in any instance sanction such a view.

The issue was cursorily addressed by the Supreme Court in *Ashcroft,* 462 U.S. at 491 n. 16, 103 S.Ct. at 2525 n. 16. The Missouri statute under consideration in *Ashcroft* permitted the minor to use her initials on the petition. This measure was sufficient, in the court's view, to assure the petitioner's confidentiality. *Id.* [6]

In *American College of Obstetricians and Gynecologists v. Thornburgh,* 737 F.2d 283 (3d Cir.1984), *aff'd on other grounds,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986), the Court enjoined enforcement of Pennsylvania's parental consent statute pending state promulgation of regulations to ensure that the bypass proceeding be conducted with anonymity. The Court cautioned that, in order to withstand constitutional scrutiny, "the alternative judicial procedure must be an established and practical avenue and may not rely solely on generally stated principles of availability, confidentiality, and form." 737 F.2d at 297.

Similarly, in *Hartigan,* 763 F.2d at 1542–44, the court enjoined enforcement of the notification statute pending promulgation of rules assuring confidentiality in the bypass proceeding. Because the statute failed to contain "any specific provisions to assure the minor's anonymity at the waiver hearing," *Id.* at 1543, and because the statute did not provide for disposition of documents following completion of the hearing, the Seventh Circuit concluded that it could not be enforced as written.

In *Planned Parenthood Ass'n of Atlanta v. Harris,* 670 F.Supp. 971 (N.D.Ga. 1987), the court concluded that the anonymity provisions contained in the Georgia statute were insufficient. Although the

rules allowed the petition to be styled using only the minor's initials, she was required to sign her full name at the end of the petition and was also required to provide her Social Security number and date of birth. The Georgia rules further did not provide for the sealing of such records. Accordingly, the court concluded that the minor's confidentiality was not sufficiently preserved.

Similarly, in *American College of Obstetricians and Gynecologists v. Thornburgh,* 656 F.Supp. 879 (E.D.Pa.1987), the court considered the adequacy of rules promulgated by the Pennsylvania Supreme Court to assure confidentiality in the bypass proceedings. Because the rule could be interpreted to require the minor complainant to sign her real name to the petition, the court held that there was an insufficient guarantee of anonymity.

Although we agree with the district court that the State of Ohio has taken "laudable steps toward complying with the *Bellotti II's* anonymity requirement," we believe, as did the district court, that the minor's anonymity is not sufficiently preserved. 633 F.Supp. at 1143. In our view, the most significant defect is that the minor is required to sign her full name at the end of the petition and to provide an address where she can be reached unless she is represented by an attorney.[7]

We further conclude that the remaining provisions regarding confidentiality amount to nothing more than the mere precatory language found offensive in *Thornburgh* and *Hartigan, supra.* Accordingly, we believe these concerns support the district court's conclusion that the

---

6. The Missouri statute under consideration in *Ashcroft* also required the petitioner or next friend to provide the age of the complainant and the name and address of each of her parents. The minor or her next friend was required to sign the petition. The Supreme Court did not consider the impact of these statutory provisions upon the minor's right to proceed anonymously. "Courts since *Ashcroft* have uniformly read footnote 16 [in *Ashcroft* ] as approving only the use of initials in bypass proceedings." *Planned Parenthood Ass'n of Atlanta v. Harris,* 670 F.Supp. 971, 991 n. 25 (N.D.Ga. 1987).

7. We note that in *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1025 (1st Cir.1981), this difficulty was eliminated by a standing order which required that the minor proceed under a pseudonym and that an affidavit containing her real identity be kept in a separate sealed file. We do not intimate, of course, that this is the only acceptable manner for ensuring that the papers filed in the juvenile court protect the minor's right to anonymity in these proceedings.

waiver provision is constitutionally defective because it fails to ensure that the minors who use it will be protected with sufficient anonymity.

■ However, we are not in full agreement with the district court's conclusions regarding certain other provisions of the Ohio statute and their effect upon the complainant's right to anonymity. Specifically, the district court believed that the venue provisions contained in the Ohio statute deprive the complainant of anonymity. Section 2151.85(A) provides that the bypass proceeding may be initiated:

> [I]n the juvenile court of the county in which [complainant] has a residence or a legal settlement, in the juvenile court of any county that borders to any extent the county in which she has a residence or legal settlement, or in the juvenile court of the county in which the hospital, clinic, or other facility in which the abortion would be performed or induced is located. . . .

The district court concluded that "[t]he venue provisions prevent [complainant] from going to a county where she might be assured of anonymity." 633 F.Supp. at 1144. We disagree. The venue provisions contained in the Ohio statute permit the minor who fears disclosure of her activities to travel to any county in the state to initiate a bypass proceeding and to have the abortion performed. Under these circumstances, we cannot conclude that the venue provisions are in themselves constitutionally defective. *See Harris,* 670 F.Supp. at 992; *Margaret S. v. Treen,* 597 F.Supp. 636, 652 (E.D.La.1984).

The district court also expressed concern that the minor complainant's right to anonymity would be compromised by the operation of Ohio Rev.Code § 2151.421 (Page Supp.1985) which requires attorneys and other professionals to report incidents of child abuse or neglect discovered during the course of their professional responsibilities. This possible infringement upon the minor plaintiff's right to anonymity has

been cured by an amendment to the statute. *See* Ohio Rev.Code § 2151.421 (Page Supp.1987).

Finally, the district court concluded that the statute's anonymity provisions were insufficient because, when read in connection with Ohio Juv.R. 16 and 2(16) and Ohio Rev.Code § 2151.28 (Page 1976), they would require the minor's parent to be notified of the impending bypass proceeding. Such a construction would be patently unconstitutional. *See Akron I,* 462 U.S. at 441 n. 31, 103 S.Ct. at 2498 n. 31. *Bellotti II,* 443 U.S. at 647, 99 S.Ct. at 3050 ("[E]very minor must have the opportunity —if she so desires—to go directly to a court without first consulting or notifying her parents."). We believe Ohio courts would construe the provisions so that the specific would govern the general, and thus any conflict would be avoided. *See Acme Eng'g Co. v. Jones,* 150 Ohio St. 423, 83 N.E.2d 202 (1948); *CADO Business Sys. v. Board of Educ.,* 8 Ohio App.3d 385, 457 N.E.2d 939 (1983); *see also Tamele v. Brinkman,* 30 Ohio Misc. 49, 284 N.E.2d 210 (1972).

In sum, while we do not completely agree with the district court's evaluation of certain discrete aspects of the anonymity provisions contained in the Ohio bypass proceeding, we conclude that the district court was correct in holding that the confidentiality provision is insufficient to comply with the dictates of *Bellotti II.* Accordingly, the judgment of the district court enjoining operation of the statute on this ground is affirmed.

## E. *Expedition*

■ The plurality opinion in *Bellotti II* mandates that the bypass proceeding be held with "sufficient expedition to provide an effective opportunity for an abortion to be obtained." 443 U.S. at 644, 99 S.Ct. at 3048. The Ohio statute under consideration in the present case contemplates a procedure that will span a maximum of twenty-two days.[8] The district court con-

---

**8.** The State belatedly suggests in its reply brief that the maximum is arguably only sixteen days. Our reading of the statute at issue and Ohio

R.App.P. 14(A) convinces us that the twenty-two day figure is correct. The State has consistently argued throughout the course of these proceed-

cluded that the time frame is too long to comply with the dictates of *Bellotti II.*

As indicated above, the term "expediency" in *Bellotti II* was defined only in terms of the preservation of an effective opportunity for an abortion to be obtained. Only once has the Supreme Court expanded upon this definition. In *Ashcroft*, the Supreme Court analyzed the expeditiousness of the bypass proceeding created by Missouri law.

> As to expedition of appeals, § 188.028.2(6) provides in relevant part: "The notice of intent to appeal shall be given within twenty-four hours from the date of issuance of the order. The record on appeal shall be completed and the appeal shall be perfected within five days from the filing of notice to appeal. Because time may be of the essence regarding the performance of the abortion, the supreme court of this state shall, by court rule, provide for expedited appellate review of cases appealed under this section."
>
> We believe this section provides the framework for a constitutionally sufficient means of expediting judicial proceedings. Immediately after the effective date of this statutory enactment, the District Court enjoined enforcement. No unemancipated pregnant minor has been required to comply with this section. Thus, to this point in time, there has been no need for the State Supreme Court to promulgate rules concerning appellate review. There is no reason to believe that Missouri will not expedite any appeal consistent with the mandate in our prior opinions.

462 U.S. at 491 n. 16, 103 S.Ct. at 2525 n. 16.

The parties in the present case agree that the framework created by Missouri

law at the time of the *Ashcroft* decision envisioned a process spanning sixteen or seventeen days (depending upon whether the minor filed her notice of appeal on the day of the decision or the following day) plus a period of sufficient expedition at both the trial level and the appellate level during which the decision would be made. The precise time limits for these periods of sufficient expedition were to be governed by rules promulgated by the Missouri Supreme Court.

Thus, the Supreme Court in *Ashcroft* did not define the constitutionally permissible outer limits of a time frame that is sufficiently expedient under *Bellotti II.* Rather, the Court merely assumed that the State of Missouri would promulgate rules consistent with the need for expedition.[9]

Conversely, in the present case, no such flexibility exists. Instead, we are faced with a bypass procedure spanning twenty-two days, arguably almost a week longer than the procedure envisioned by Missouri law.

The court below, and other courts considering this issue, have recognized that minors often do not learn of their pregnancies until a late stage in the first trimester. "Studies show that the problem [of delay] is particularly acute for pregnant minors, who are more likely to seek abortions at a later stage of gestation than are older women. Nationally, over half of the abortions obtained by adolescents are performed at 9 or more weeks of gestation." *Thornburgh*, 656 F.Supp. at 887. The Supreme Court has recognized that "prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician." *Roe*, 410 U.S. at 164, 93 S.Ct. at

---

ings that a length of twenty-two days is constitutionally permissible.

**9.** Mo.R.Civ.P. 84.02 was amended to provide that appeals in notification bypass proceedings "shall be expedited." The Eighth Circuit has held that the Missouri statute and rule for expedited appeal provides sufficient expedition under *Ashcroft* and *Bellotti II. T.L.J. v. Webster*, 792 F.2d 734, 737–38 (8th Cir.1986).

We note that the discussion of expediency in *Ashcroft* was contained in the opinion of Justice Powell, in which only Chief Justice Burger concurred. Nevertheless, a majority of the Court upheld the statute's constitutionality, as Justices O'Connor, White, and Rehnquist concluded that it imposed no undue burden on the minor's right to undergo an abortion.

732. As the pregnancy advances, the state's interests in protecting maternal health and "the potentiality of human life" represented by the fetus justify greater state regulation. *Id.* at 164, 93 S.Ct. at 732. Accordingly, time lost during the first trimester is especially critical.

In *Thornburgh,* 656 F.Supp. at 887–88, the court held that a bypass proceeding taking twenty-three days unduly infringed upon the minor's right to obtain an abortion. Because a minor who would be forced to pursue an appeal process consuming twenty-three days might well be pushed into the second trimester of her pregnancy, the court concluded that the twenty-three day procedure was unconstitutional.

Similarly, in *Glick v. McKay,* 616 F.Supp. 322, 326 (D.Nev.1985), the court concluded that a bypass proceeding which could last for three weeks "raises serious questions of the statute's constitutionality because time lost in the first trimester is crucial." Accordingly, enforcement of the statute was enjoined. *Cf. Harris,* 670 F.Supp. at 971 (statute containing time frame similar to one at issue in present case upheld).

We agree with the district court and the courts in *Thornburgh* and *Glick* that time lost during the first trimester is, indeed, crucial. Although the Ohio legislature has made a commendable attempt to provide an expedited proceeding for the determination of maturity, we conclude that the possible twenty-two day delay established by House Bill 319 unduly burdens the minor's right to obtain an abortion.

### F. The "Pocket Authorization" Provision

■ The Ohio statute provides that if the juvenile court fails to hold a hearing on the complainant's petition within five business days after it is filed, the minor is entitled to proceed with the abortion without parental notification. Similarly, if the court of appeals does not act upon the petition within five days after the appeal is docketed, the minor is entitled to proceed without parental notification or judicial authorization.

The district court struck down these provisions on the ground that they are unconstitutionally vague. Because we believe that the constructive order provisions unduly burden the minor's right to obtain an abortion, we affirm the judgment of the district court insofar as it found these provisions to be constitutionally deficient.

In *Glick,* 616 F.Supp. at 325–26, the court preliminarily enjoined enforcement of a provision substantially identical to the ones at issue in the present case.

> [T]he provision for a "pocket approval" puts the physician in a difficult position. If the district court does nothing, authorization for the physician to perform the abortion is deemed to have been granted. The physician is subjected to liability if the abortion is performed without authorization, but the physician has nothing tangible to rely upon to prove compliance with the law. In the case of "pocket approval," no record is made of the authorization.

*Id.* at 325 (citation omitted). We agree with the court in *Glick* that a "pocket approval" provision "puts the physician in a difficult position," and we go a step further and hold that the operation of this procedure places an undue burden upon the minor's right to seek an abortion.

We recognize that the "pocket approval" provisions were ostensibly inserted into the statute in order to protect the minor's right to an expedient disposition of her petition. Nevertheless, we believe that the practical effect of such a provision is to frustrate that right. The minor entitled to avail herself of the "pocket approval" provision is left with nothing tangible to show the physician in support of her authority to proceed in the absence of parental or express judicial authorization. Given the severe penalties imposed upon a physician who performs an abortion without adequate authorization, we believe it is clear that a physician would be unwilling to proceed under such circumstances. The resulting confusion can only facilitate delay at a time when each passing day pushes the minor complainant closer to the end of the first trimester. Accordingly, we conclude that

the "pocket approval" provisions contained in the Ohio statute are unduly burdensome.

G. *Twenty–Four Hour Waiting Period and Appointment of Counsel on Appeal*

■ In the proceedings below, the district court rejected plaintiffs' argument that the twenty-four hour postnotification waiting period is unconstitutional. Furthermore, the district court rejected the argument that the statute is constitutionally deficient because it fails to provide for the appointment of counsel on appeal. Although plaintiffs request that we reverse the district court's holding on these issues, we note that they have failed to perfect a cross-appeal.

This court has held that "filing a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or reduce those of his adversary." *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir.), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 507, 83 L.Ed.2d 398 (1984); *see also Ford Motor Credit Co. v. Aetna Casualty & Sur. Co.*, 717 F.2d 959 (6th Cir.1983).

It is true that a party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the right of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below.

*United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924). In the present case, plaintiffs attempt to "enlarge their own rights" by asking this court to strike down statutory provisions upon which the district court has placed its imprimatur. In the absence of a cross-appeal, we are powerless to do so.

## IV.

In conclusion, our review of the Ohio statute in light of the governing Supreme Court precedent convinces us that the district court was correct in holding that: (1) a *Bellotti II* bypass procedure is required in statutes providing for parental notification when a minor seeks an abortion; and (2) the bypass procedure created by Ohio law is constitutionally deficient in that it requires the attending physician to effectuate the notification; that it contains a burdensome pleading requirement for which no legitimate justification is advanced; that it imposes on the minor an unduly burdensome standard of proof; that it fails to sufficiently preserve the minor's right to confidentiality and expediency; and that it contains "pocket approval" provisions which are unduly burdensome.

Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.

## APPENDIX I

1985 Session Laws—Full Text

## AMENDED SUBSTITUTE HOUSE

## BILL NO. 319

Act Effective Date: 3–24–86

Date Passed: 11–20–85

Date Approved by Governor: Becomes law without governor's signature

Date Filed: 12–23–85

File Number: 125

Chief Sponsor: LUEBBERS

*General and Permanent Nature:* Per the Director of the Ohio Legislative Service Commission, this Act's section numbering of law of a general and permanent nature is complete and in conformity with the Revised Code.

To amend sections 149.43, 2305.11, 2919.-12, and 4731.22 and to enact sections 2151.85 and 2505.073 of the Revised Code to specify that before an abortion can be performed or induced upon an unmarried, unemancipated woman under 18 years of age, either notification must be given to the woman's parent,

guardian, or custodian, notification must be given to a specified stepparent, grandparent, or sibling over 21 years of age upon request of the woman and upon the filing of affidavits alleging fear of abuse by the parent, guardian, or custodian, an order of the juvenile court authorizing the woman to act without notice to the parent, guardian, or custodian must be obtained, or a constructive order of the juvenile court or court of appeals authorizing the woman to act without such notice must be obtained due to the court's inaction: and to make violations of this requirement specific grounds for disciplining a physician.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That sections 149.43, 2305.11, 2919.12, and 4731.22 be amended, and sections 2151.85 and 2505.073 of the Revised Code be enacted to read as follows:

**149.43  Availability of public records [Eff. 3–24–86]**

(A) As used in this section:

(1) "Public record" means any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except medical records, records pertaining to adoption, probation, and parole proceedings. RECORDS PERTAINING TO ACTIONS UNDER SECTION 2151.85 OF THE REVISED CODE AND TO APPEALS OF ACTIONS ARISING UNDER THAT SECTION, records listed in division (A) of section 3107.42 of the Revised Code, trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law.

(2) "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

(a) The identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised;

(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose his identity;

(c) Specific confidential investigatory techniques or procedures or specific investigatory work product;

(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

(3) "Medical record" means any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment.

(4) "Trial preparation record" means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney.

(B) All public records shall be promptly prepared and made available for inspection to any member of the general public at all reasonable times during regular business hours. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. In order to facilitate broader access to public records, governmental units shall maintain public records in such a manner that they can be made available for inspection in accordance with this division.

(C) Chapter 1347 of the Revised Code does not limit the provisions of this section.

**2151.85  Minor female's complaint for abortion; hearing; appeal [Eff. 3–24–86]**

(A) A WOMAN WHO IS PREGNANT, UNMARRIED, UNDER EIGHTEEN YEARS OF AGE, AND UNEMANCIPATED AND WHO WISHES TO HAVE

AN ABORTION WITHOUT THE NOTIFICATION OF HER PARENTS, GUARDIAN, OR CUSTODIAN MAY FILE A COMPLAINT IN THE JUVENILE COURT OF THE COUNTY IN WHICH SHE HAS A RESIDENCE OR LEGAL SETTLEMENT, IN THE JUVENILE COURT OF ANY COUNTY THAT BORDERS TO ANY EXTENT THE COUNTY IN WHICH SHE HAS A RESIDENCE OR LEGAL SETTLEMENT, OR IN THE JUVENILE COURT OF THE COUNTY IN WHICH THE HOSPITAL, CLINIC, OR OTHER FACILITY IN WHICH THE ABORTION WOULD BE PERFORMED OR INDUCED IS LOCATED, REQUESTING THE ISSUANCE OF AN ORDER AUTHORIZING HER TO CONSENT TO THE PERFORMANCE OR INDUCEMENT OF AN ABORTION WITHOUT THE NOTIFICATION OF HER PARENTS, GUARDIAN, OR CUSTODIAN.

THE COMPLAINT SHALL BE MADE UNDER OATH AND SHALL INCLUDE ALL THE FOLLOWING:

(1) A STATEMENT THAT THE COMPLAINANT IS PREGNANT;

(2) A STATEMENT THAT THE COMPLAINANT IS UNMARRIED, UNDER EIGHTEEN YEARS OF AGE, AND UNEMANCIPATED;

(3) A STATEMENT THAT THE COMPLAINANT WISHES TO HAVE AN ABORTION WITHOUT THE NOTIFICATION OF HER PARENTS, GUARDIAN, OR CUSTODIAN;

(4) AN ALLEGATION OF EITHER OR BOTH OF THE FOLLOWING:

(a) THAT THE COMPLAINANT IS SUFFICIENTLY MATURE AND WELL ENOUGH INFORMED TO INTELLIGENTLY DECIDE WHETHER TO HAVE AN ABORTION WITHOUT THE NOTIFICATION OF HER PARENTS, GUARDIAN, OR CUSTODIAN;

(b) THAT ONE OR BOTH OF HER PARENTS, HER GUARDIAN, OR HER CUSTODIAN WAS ENGAGED IN A PATTERN OF PHYSICAL, SEXUAL, OR EMOTIONAL ABUSE AGAINST HER, OR THAT THE NOTIFICATION OF HER PARENTS, GUARDIAN, OR CUSTODIAN OTHERWISE IS NOT IN HER BEST INTEREST.

(5) A STATEMENT AS TO WHETHER THE COMPLAINANT HAS RETAINED AN ATTORNEY AND, IF SHE HAS RETAINED AN ATTORNEY, THE NAME, ADDRESS, AND TELEPHONE NUMBER OF HER ATTORNEY.

(B)(1) THE COURT SHALL FIX A TIME FOR A HEARING ON ANY COMPLAINT FILED PURSUANT TO DIVISION (A) OF THIS SECTION AND SHALL KEEP A RECORD OF ALL TESTIMONY AND OTHER ORAL PROCEEDINGS IN THE ACTION. THE COURT SHALL HEAR AND DETERMINE THE ACTION AND SHALL NOT REFER ANY PORTION OF IT TO A REFEREE. THE HEARING SHALL BE HELD AT THE EARLIEST POSSIBLE TIME, BUT NOT LATER THAN THE FIFTH BUSINESS DAY AFTER THE DAY THAT THE COMPLAINT IS FILED. THE COURT SHALL ENTER JUDGMENT ON THE COMPLAINT IMMEDIATELY AFTER THE HEARING IS CONCLUDED. IF THE HEARING REQUIRED BY THIS DIVISION IS NOT HELD BY THE FIFTH BUSINESS DAY AFTER THE COMPLAINT IS FILED, THE FAILURE TO HOLD THE HEARING SHALL BE CONSIDERED TO BE A CONSTRUCTIVE ORDER OF THE COURT AUTHORIZING THE COMPLAINANT TO CONSENT TO THE PERFORMANCE OR INDUCEMENT OF AN ABORTION WITHOUT THE NOTIFICATION OF HER PARENT, GUARDIAN, OR CUSTODIAN, AND THE COMPLAINANT AND ANY OTHER PERSON MAY RELY ON THE CONSTRUCTIVE ORDER TO THE SAME EXTENT AS IF THE COURT ACTUALLY HAD ISSUED AN ORDER UNDER THIS SECTION AUTHORIZING THE COMPLAINANT TO CONSENT TO THE PERFORMANCE OR INDUCEMENT OF AN ABORTION WITHOUT SUCH NOTIFICATION.

(2) THE COURT SHALL APPOINT A GUARDIAN AD LITEM TO PROTECT THE INTERESTS OF THE COMPLAINANT AT THE HEARING THAT IS HELD

PURSUANT TO THIS SECTION. IF THE COMPLAINANT HAS NOT RETAINED AN ATTORNEY, THE COURT SHALL APPOINT AN ATTORNEY TO REPRESENT HER. IF THE GUARDIAN AD LITEM IS AN ATTORNEY ADMITTED TO THE PRACTICE OF LAW IN THIS STATE, THE COURT ALSO MAY APPOINT HIM TO SERVE AS THE COMPLAINANT'S ATTORNEY.

(C)(1) IF THE COMPLAINANT MAKES ONLY THE ALLEGATION SET FORTH IN DIVISION (A)(4)(a) OF THIS SECTION AND IF THE COURT FINDS, BY CLEAR AND CONVINCING EVIDENCE, THAT THE COMPLAINANT IS SUFFICIENTLY MATURE AND WELL ENOUGH INFORMED TO DECIDE INTELLIGENTLY WHETHER TO HAVE AN ABORTION, THE COURT SHALL ISSUE AN ORDER AUTHORIZING THE COMPLAINANT TO CONSENT TO THE PERFORMANCE OR INDUCEMENT OF AN ABORTION WITHOUT THE NOTIFICATION OF HER PARENTS, GUARDIAN, OR CUSTODIAN. IF THE COURT DOES NOT MAKE THE FINDING SPECIFIED IN THIS DIVISION, IT SHALL DISMISS THE COMPLAINT.

(2) IF THE COMPLAINANT MAKES ONLY THE ALLEGATION SET FORTH IN DIVISION (A)(4)(b) OF THIS SECTION AND IF THE COURT FINDS, BY CLEAR AND CONVINCING EVIDENCE, THAT THERE IS EVIDENCE OF A PATTERN OF PHYSICAL, SEXUAL, OR EMOTIONAL ABUSE OF THE COMPLAINANT BY ONE OR BOTH OF HER PARENTS, HER GUARDIAN, OR HER CUSTODIAN, OR THAT THE NOTIFICATION OF THE PARENTS, GUARDIAN, OR CUSTODIAN OF THE COMPLAINANT OTHERWISE IS NOT IN THE BEST INTEREST OF THE COMPLAINANT, THE COURT SHALL ISSUE AN ORDER AUTHORIZING THE COMPLAINANT TO CONSENT TO THE PERFORMANCE OR INDUCEMENT OF AN ABORTION WITHOUT THE NOTIFICATION OF HER PARENTS, GUARDIAN, OR CUSTODIAN. IF THE COURT DOES NOT MAKE THE FINDING SPECIFIED IN THIS DIVISION, IT SHALL DISMISS THE COMPLAINT.

(3) IF THE COMPLAINANT MAKES BOTH OF THE ALLEGATIONS SET FORTH IN DIVISIONS (A)(4)(a) AND (b) OF THIS SECTION, THE COURT SHALL PROCEED AS FOLLOWS:

(a) THE COURT FIRST SHALL DETERMINE WHETHER IT CAN MAKE THE FINDING SPECIFIED IN DIVISION (C)(1) OF THIS SECTION AND, IF SO, SHALL ISSUE AN ORDER PURSUANT TO THAT DIVISION. IF THE COURT ISSUES SUCH AN ORDER, IT SHALL NOT PROCEED PURSUANT TO DIVISION (C)(3)(b) OF THIS SECTION. IF THE COURT DOES NOT MAKE THE FINDING SPECIFIED IN DIVISION (C)(1) OF THIS SECTION, IT SHALL PROCEED PURSUANT TO DIVISION (C)(3)(b) OF THIS SECTION.

(b) IF THE COURT PURSUANT TO DIVISION (C)(3)(a) OF THIS SECTION DOES NOT MAKE THE FINDING SPECIFIED IN DIVISION (C)(1) OF THIS SECTION, IT SHALL PROCEED TO DETERMINE WHETHER IT CAN MAKE THE FINDING SPECIFIED IN DIVISION (C)(2) OF THIS SECTION AND, IF SO, SHALL ISSUE AN ORDER PURSUANT TO THAT DIVISION. IF THE COURT DOES NOT MAKE THE FINDING SPECIFIED IN DIVISION (C)(2) OF THIS SECTION, IT SHALL DISMISS THE COMPLAINT.

(D) THE COURT SHALL NOT NOTIFY THE PARENTS, GUARDIAN, OR CUSTODIAN OF THE COMPLAINANT THAT SHE IS PREGNANT OR THAT SHE WANTS TO HAVE AN ABORTION.

(E) IF THE COURT DISMISSES THE COMPLAINT, IT IMMEDIATELY SHALL NOTIFY THE COMPLAINANT THAT SHE HAS A RIGHT TO APPEAL UNDER SECTION 2505.073 OF THE REVISED CODE.

(F) EACH HEARING UNDER THIS SECTION SHALL BE CONDUCTED IN A MANNER THAT WILL PRESERVE THE ANONYMITY OF THE COMPLAINANT. THE COMPLAINT AND ALL OTHER PAPERS AND RECORDS THAT PERTAIN

TO AN ACTION COMMENCED UNDER THIS SECTION SHALL BE KEPT CONFIDENTIAL AND ARE NOT PUBLIC RECORDS UNDER SECTION 149.43 OF THE REVISED CODE.

(G) THE CLERK OF THE SUPREME COURT SHALL PRESCRIBE COMPLAINT AND NOTICE OF APPEAL FORMS THAT SHALL BE USED BY A COMPLAINANT FILING A COMPLAINT UNDER THIS SECTION AND BY AN APPELLANT FILING AN APPEAL UNDER SECTION 2505.073 OF THE REVISED CODE. THE CLERK OF EACH JUVENILE COURT SHALL FURNISH BLANK COPIES OF THE FORMS, WITHOUT CHARGE, TO ANY PERSON WHO REQUESTS THEM.

(H) NO FILING FEE SHALL BE REQUIRED OF, AND NO COURT COSTS SHALL BE ASSESSED AGAINST, A COMPLAINANT FILING A COMPLAINT UNDER THIS SECTION OR AN APPELLANT FILING AN APPEAL UNDER SECTION 2505.073 OF THE REVISED CODE.

(I) AS USED IN THIS SECTION, "UNEMANCIPATED" MEANS THAT A WOMAN WHO IS UNMARRIED AND UNDER EIGHTEEN YEARS OF AGE HAS NOT ENTERED THE ARMED SERVICES OF THE UNITED STATES, HAS NOT BECOME EMPLOYED AND SELF-SUBSISTING, OR HAS NOT OTHERWISE BECOME INDEPENDENT FROM THE CARE AND CONTROL OF HER PARENT, GUARDIAN, OR CUSTODIAN.

**2305.11 Time limitations for bringing certain actions; extensions; effect of legal disability [Eff. 3–24–86]**

(A) An action for libel, slander, malicious prosecution, false imprisonment, or malpractice, including an action for malpractice against a physician, podiatrist, hospital, or dentist, or upon a statute for a penalty or forfeiture, shall be brought within one year after the cause thereof accrued, provided that an action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation, shall be brought within two years after the cause thereof accrued.

If a written notice, prior to the expiration of time contained in this division, is given to any person in a medical claim that an individual is presently considering bringing an action against that person relating to professional services provided to that individual, then an action by that individual against that person may be commenced at any time within one hundred eighty days after that notice is given.

(B) In no event shall any medical claim against a physician, podiatrist, or a hospital or a dental claim against a dentist be brought more than four years after the act or omission constituting the alleged malpractice occurred. The limitations in this section for filing such a malpractice action against a physician, podiatrist, hospital, or dentist apply to all persons regardless of legal disability and notwithstanding section 2305.16 of the Revised Code, provided that a minor who has not attained his tenth birthday shall have until his fourteenth birthday in which to file an action for malpractice against a physician or hospital.

(C) A civil action for ~~nonconsensual~~ UNLAWFUL abortion pursuant to section 2919.12 of the Revised Code shall be commenced within one year after the abortion.

(D) As used in this section:

(1) "Hospital" includes any person, corporation, association, board, or authority responsible for the operation of any hospital licensed or registered in the state, including without limitation those which are owned or operated by the state, political subdivisions, any person, corporation, or any combination thereof. Such term further includes any person, corporation, association, board, entity, or authority responsible for the operation of any clinic that employs a full-time staff of physicians practicing in more than one recognized medical specialty and rendering advice, diagnosis, care and treatment to individuals. It does not include any hospital operated by the government of the United States or any branch thereof.

(2) "Physician" means all persons who are licensed to practice medicine and surgery or osteopathic medicine and surgery by the state medical board.

(3) "Medical claim" means any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person.

(4) "Podiatrist" means all persons who are licensed to practice podiatric medicine and surgery by the state medical board.

(5) "Dentist" means all persons licensed to practice dentistry by the state dental board.

(6) "Dental claim" means any claim asserted in any civil action against a dentist arising out of a dental operation or the dental diagnosis, care, or treatment of any person.

**2505.073  Appeal from dismissal of minor female's complaint for abortion [Eff. 3–24–86]**

(A) A COMPLAINANT WHOSE COMPLAINT UNDER SECTION 2151.85 OF THE REVISED CODE IS DISMISSED BY A JUVENILE COURT, MAY APPEAL IN ACCORDANCE WITH THIS SECTION WITHIN FOUR DAYS AFTER A NOTICE OF APPEAL IS FILED IN AN ACTION ARISING UNDER THAT SECTION. THE CLERK OF THE JUVENILE COURT SHALL DELIVER A COPY OF THE NOTICE OF APPEAL AND THE RECORD ON APPEAL TO THE CLERK OF THE COURT OF APPEALS NAMED IN THE NOTICE. UPON RECEIPT OF THE NOTICE AND RECORD, THE CLERK OF THE COURT OF APPEALS SHALL PLACE THE APPEAL ON THE DOCKET OF THE COURT.

THE APPELLANT SHALL FILE HER BRIEF WITHIN FOUR DAYS AFTER THE APPEAL IS DOCKETED. UNLESS THE APPELLANT WAIVES THE RIGHT TO ORAL ARGUMENT, THE COURT OF APPEALS SHALL HEAR ORAL ARGUMENT WITHIN FIVE DAYS AFTER THE APPEAL IS DOCKETED. THE COURT OF APPEALS SHALL ENTER JUDGMENT IN THE APPEAL IMMEDIATELY AFTER THE ORAL ARGUMENT OR, IF ORAL ARGUMENT HAS BEEN WAIVED, WITHIN FIVE DAYS AFTER THE APPEAL IS DOCKETED.

NO FILING FEE SHALL BE REQUIRED OF, AND NO COURT COSTS SHALL BE ASSESSED AGAINST, AN APPELLANT WHO APPEALS UNDER THIS SECTION.

UPON MOTION OF THE APPELLANT AND FOR GOOD CAUSE SHOWN, THE COURT OF APPEALS MAY SHORTEN OR EXTEND ANY OF THE MAXIMUM TIMES SET FORTH IN THIS DIVISION. HOWEVER, IN ANY CASE, IF JUDGMENT IS NOT ENTERED WITHIN FIVE DAYS AFTER THE APPEAL IS DOCKETED, THE FAILURE TO ENTER THE JUDGMENT SHALL BE CONSIDERED TO BE A CONSTRUCTIVE ORDER OF THE COURT AUTHORIZING THE APPELLANT TO CONSENT TO THE PERFORMANCE OR INDUCEMENT OF AN ABORTION WITHOUT THE NOTIFICATION OF HER PARENT, GUARDIAN, OR CUSTODIAN, AND THE APPELLANT AND ANY OTHER PERSON MAY RELY ON THE CONSTRUCTIVE ORDER TO THE SAME EXTENT AS IF THE COURT ACTUALLY HAD ENTERED A JUDGMENT UNDER THIS SECTION AUTHORIZING THE APPELLANT TO CONSENT TO THE PERFORMANCE OR INDUCEMENT OF AN ABORTION WITHOUT SUCH NOTIFICATION.

IN THE INTEREST OF JUSTICE, THE COURT OF APPEALS, IN AN APPEAL IN ACCORDANCE WITH THIS SECTION, SHALL LIBERALLY MODIFY OR DISPENSE WITH THE FORMAL REQUIREMENTS THAT NORMALLY APPLY AS TO THE CONTENTS AND FORM OF AN APPELLANT'S BRIEF.

(B) ALL PROCEEDINGS UNDER DIVISION (A) OF THIS SECTION SHALL BE CONDUCTED IN A MANNER THAT WILL PRESERVE THE ANONYMITY OF THE APPELLANT ON APPEAL. ALL PAPERS AND RECORDS THAT PERTAIN TO AN APPEAL UNDER THIS SECTION SHALL BE KEPT CONFIDENTIAL AND ARE NOT PUBLIC RECORDS

UNDER SECTION 149.43 OF THE REVISED CODE.

**2919.12 Abortion without informed consent prohibited; unmarried minors [Eff. 3–24–86]**

(A) No person shall perform or induce an abortion without the informed consent of the pregnant woman.

(B) ~~If the pregnant woman is an unmarried minor, the pregnant woman's consent must be accompanied by the informed consent of one of her parents or her custodian or guardian.~~

~~(C)~~*(1)(a)* NO PERSON SHALL KNOWINGLY PERFORM OR INDUCE AN ABORTION UPON A WOMAN WHO IS PREGNANT, UNMARRIED, UNDER EIGHTEEN YEARS OF AGE, AND UNEMANCIPATED UNLESS AT LEAST ONE OF THE FOLLOWING APPLIES:

(i) SUBJECT TO DIVISION (B)(2) OF THIS SECTION, THE PERSON HAS GIVEN AT LEAST TWENTY–FOUR HOURS ACTUAL NOTICE, IN PERSON OR BY TELEPHONE, TO ONE OF THE WOMAN'S PARENTS, HER GUARDIAN, OR HER CUSTODIAN AS TO THE INTENTION TO PERFORM OR INDUCE THE ABORTION, PROVIDED THAT IF THE WOMAN HAS REQUESTED, IN ACCORDANCE WITH DIVISION (B)(1)(b) OF THIS SECTION, THAT NOTICE BE GIVEN TO A SPECIFIED BROTHER OR SISTER OF THE WOMAN WHO IS TWENTY–ONE YEARS OF AGE OR OLDER OR TO A SPECIFIED STEPPARENT OR GRANDPARENT OF THE WOMAN INSTEAD OF TO ONE OF HER PARENTS, HER GUARDIAN, OR HER CUSTODIAN, AND IF THE PERSON IS NOTIFIED BY A JUVENILE COURT THAT AFFIDAVITS OF THE TYPE DESCRIBED IN THAT DIVISION HAVE BEEN FILED WITH THAT COURT, THE TWENTY–FOUR HOURS ACTUAL NOTICE DESCRIBED IN THIS DIVISION AS TO THE INTENTION TO PERFORM OR INDUCE THE ABORTION SHALL BE GIVEN, IN PERSON OR BY TELEPHONE, TO THE SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT INSTEAD OF TO THE PARENT, GUARDIAN, OR CUSTODIAN;

(ii) ONE OF THE WOMAN'S PARENTS, HER GUARDIAN, OR HER CUSTODIAN HAS CONSENTED IN WRITING TO THE PERFORMANCE OR INDUCEMENT OF THE ABORTION;

(iii) A JUVENILE COURT PURSUANT TO SECTION 2151.85 OF THE REVISED CODE ISSUES AN ORDER AUTHORIZING THE WOMAN TO CONSENT TO THE ABORTION WITHOUT NOTIFICATION OF ONE OF HER PARENTS, HER GUARDIAN, OR HER CUSTODIAN;

(iv) A JUVENILE COURT OR A COURT OF APPEALS, BY ITS INACTION, CONSTRUCTIVELY HAS AUTHORIZED THE WOMAN TO CONSENT TO THE ABORTION WITHOUT NOTIFICATION OF ONE OF HER PARENTS, HER GUARDIAN, OR HER CUSTODIAN UNDER DIVISION (B)(1) OF SECTION 2151.85 OR DIVISION (A) OF SECTION 2505.073 OF THE REVISED CODE.

(b) IF A WOMAN WHO IS PREGNANT, UNMARRIED, UNDER EIGHTEEN YEARS OF AGE, AND UNEMANCIPATED DESIRES NOTIFICATION AS TO A PERSON'S INTENTION TO PERFORM OR INDUCE AN ABORTION ON THE WOMAN TO BE GIVEN TO A SPECIFIED BROTHER OR SISTER OF THE WOMAN WHO IS TWENTY–ONE YEARS OF AGE OR OLDER OR TO A SPECIFIED STEPPARENT OR GRANDPARENT OF THE WOMAN INSTEAD OF TO ONE OF HER PARENTS, HER GUARDIAN, OR HER CUSTODIAN, THE PERSON WHO INTENDS TO PERFORM OR INDUCE THE ABORTION SHALL NOTIFY THE SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT INSTEAD OF THE PARENT, GUARDIAN, OR CUSTODIAN FOR PURPOSES OF DIVISION (A)(1)(a)(i) OF THIS SECTION IF ALL OF THE FOLLOWING APPLY:

(i) THE WOMAN HAS REQUESTED THE PERSON TO PROVIDE THE NOTIFICATION TO THE SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT, CLEARLY HAS IDENTIFIED THE SPECIFIED BROTHER, SISTER,

STEPPARENT, OR GRANDPARENT AND HER RELATION TO THAT PERSON, AND, IF THE SPECIFIED RELATIVE IS A BROTHER OR SISTER, HAS INDICATED THE AGE OF THE BROTHER OR SISTER;

(ii) THE WOMAN HAS EXECUTED AN AFFIDAVIT STATING THAT SHE IS IN FEAR OF PHYSICAL, SEXUAL, OR SEVERE EMOTIONAL ABUSE FROM THE PARENT, GUARDIAN, OR CUSTODIAN WHO OTHERWISE WOULD BE NOTIFIED UNDER DIVISION (B)(1)(a)(i) OF THIS SECTION, AND THAT THE FEAR IS BASED ON A PATTERN OF PHYSICAL, SEXUAL, OR SEVERE EMOTIONAL ABUSE OF HER EXHIBITED BY THAT PARENT, GUARDIAN, OR CUSTODIAN, HAS FILED THE AFFIDAVIT WITH THE JUVENILE COURT OF THE COUNTY IN WHICH THE WOMAN HAS A RESIDENCE OR LEGAL SETTLEMENT, THE JUVENILE COURT OF ANY COUNTY THAT BORDERS TO ANY EXTENT THE COUNTY IN WHICH SHE HAS A RESIDENCE OR LEGAL SETTLEMENT, OR THE JUVENILE COURT OF THE COUNTY IN WHICH THE HOSPITAL, CLINIC, OR OTHER FACILITY IN WHICH THE ABORTION WOULD BE PERFORMED OR INDUCED IS LOCATED, AND HAS GIVEN THE COURT WRITTEN NOTICE OF THE NAME AND ADDRESS OF THE PERSON WHO INTENDS TO PERFORM OR INDUCE THE ABORTION;

(iii) THE SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT HAS EXECUTED AN AFFIDAVIT STATING THAT THE WOMAN HAS REASON TO FEAR PHYSICAL, SEXUAL, OR SEVERE EMOTIONAL ABUSE FROM THE PARENT, GUARDIAN, OR CUSTODIAN WHO OTHERWISE WOULD BE NOTIFIED UNDER DIVISION (B)(1)(a)(i) OF THIS SECTION, BASED ON A PATTERN OF PHYSICAL, SEXUAL, OR SEVERE EMOTIONAL ABUSE OF HER BY THAT PARENT, GUARDIAN, OR CUSTODIAN, AND THE WOMAN OR THE SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT HAS FILED THE AFFIDAVIT WITH THE JUVENILE COURT IN WHICH THE AFFIDAVIT DESCRIBED IN DIVISION (B)(1)(b)(ii) OF THIS SECTION WAS FILED;

(iv) THE JUVENILE COURT IN WHICH THE AFFIDAVITS DESCRIBED IN DIVISIONS (B)(1)(b)(ii) AND (iii) OF THIS SECTION WERE FILED HAS NOTIFIED THE PERSON THAT BOTH OF THOSE AFFIDAVITS HAVE BEEN FILED WITH THE COURT.

(c) IF AN AFFIDAVIT OF THE TYPE DESCRIBED IN DIVISION (B)(1)(b)(ii) OF THIS SECTION AND AN AFFIDAVIT OF THE TYPE DESCRIBED IN DIVISION (B)(1)(b)(iii) OF THIS SECTION ARE FILED WITH A JUVENILE COURT AND THE COURT HAS BEEN PROVIDED WITH WRITTEN NOTICE OF THE NAME AND ADDRESS OF THE PERSON WHO INTENDS TO PERFORM OR INDUCE AN ABORTION UPON THE WOMAN TO WHOM THE AFFIDAVITS PERTAIN, THE COURT PROMPTLY SHALL NOTIFY THE PERSON WHO INTENDS TO PERFORM OR INDUCE THE ABORTION THAT THE AFFIDAVITS HAVE BEEN FILED. IF POSSIBLE, THE NOTICE TO THE PERSON SHALL BE GIVEN IN PERSON OR BY TELEPHONE.

(2) IF DIVISION (B)(1)(a)(ii), (iii), OR (iv) OF THIS SECTION DOES NOT APPLY, AND IF NO PARENT, GUARDIAN, OR CUSTODIAN CAN BE REACHED FOR PURPOSES OF DIVISION (B)(1)(a)(i) OF THIS SECTION AFTER A REASONABLE EFFORT, OR IF NOTIFICATION IS TO BE GIVEN TO A SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT UNDER THAT DIVISION AND THE SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT CANNOT BE REACHED FOR PURPOSES OF THAT DIVISION AFTER A REASONABLE EFFORT, NO PERSON SHALL PERFORM OR INDUCE SUCH AN ABORTION WITHOUT GIVING AT LEAST FORTY–EIGHT HOURS CONSTRUCTIVE NOTICE TO ONE OF THE WOMAN'S PARENTS, HER GUARDIAN, OR HER CUSTODIAN, BY BOTH CERTI-

FIED AND ORDINARY MAIL SENT TO THE LAST KNOWN ADDRESS OF THE PARENT, GUARDIAN, OR CUSTODIAN, OR IF NOTIFICATION FOR PURPOSES OF DIVISION (B)(1)(a)(i) OF THIS SECTION IS TO BE GIVEN TO A SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT, WITHOUT GIVING AT LEAST FORTY–EIGHT HOURS CONSTRUCTIVE NOTICE TO THAT SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT BY BOTH CERTIFIED AND ORDINARY MAIL SENT TO THE LAST KNOWN ADDRESS OF THAT SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT. THE FORTY–EIGHT HOUR PERIOD UNDER THIS DIVISION BEGINS WHEN THE CERTIFIED MAIL NOTICE IS MAILED. IF A PARENT, GUARDIAN, OR CUSTODIAN OF THE WOMAN, OR IF NOTIFICATION UNDER DIVISION (B)(1)(a)(i) OF THIS SECTION IS TO BE GIVEN TO A SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT, THE SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT, IS NOT REACHED WITHIN THE FORTY–EIGHT HOUR PERIOD, THE ABORTION MAY PROCEED EVEN IF THE CERTIFIED MAIL NOTICE IS NOT RECEIVED.

(3) IF A PARENT, GUARDIAN, CUSTODIAN, OR SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT WHO HAS BEEN NOTIFIED IN ACCORDANCE WITH DIVISION (B)(1) OR (2) OF THIS SECTION CLEARLY AND UNEQUIVOCALLY EXPRESSES THAT HE OR SHE DOES NOT WISH TO CONSULT WITH A PREGNANT WOMAN PRIOR TO HER ABORTION, THEN THE ABORTION MAY PROCEED WITHOUT ANY FURTHER WAITING PERIOD.

(4) FOR PURPOSES OF PROSECUTIONS FOR A VIOLATION OF DIVISION (B)(1) OR (2) OF THIS SECTION, IT SHALL BE A REBUTTABLE PRESUMPTION THAT A WOMAN WHO IS UNMARRIED AND UNDER EIGHTEEN YEARS OF AGE IS UNEMANCIPATED.

(C)(1) IT IS AN AFFIRMATIVE DEFENSE TO A CHARGE UNDER DIVISION (B)(1) OR (2) OF THIS SECTION THAT THE PREGNANT WOMAN PROVIDED THE PERSON WHO PERFORMED OR INDUCED THE ABORTION WITH FALSE, MISLEADING, OR INCORRECT INFORMATION ABOUT HER AGE, MARITAL STATUS, OR EMANCIPATION, ABOUT THE AGE OF A BROTHER OR SISTER TO WHOM SHE REQUESTED NOTICE BE GIVEN AS A SPECIFIED RELATIVE INSTEAD OF TO ONE OF HER PARENTS, HER GUARDIAN, OR HER CUSTODIAN, OR ABOUT THE LAST KNOWN ADDRESS OF EITHER OF HER PARENTS, HER GUARDIAN, HER CUSTODIAN, OR A SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT TO WHOM SHE REQUESTED NOTICE BE GIVEN AND THE PERSON WHO PERFORMED OR INDUCED THE ABORTION DID NOT OTHERWISE HAVE REASONABLE CAUSE TO BELIEVE THE PREGNANT WOMAN WAS UNDER EIGHTEEN YEARS OF AGE, UNMARRIED, OR UNEMANCIPATED, TO BELIEVE THAT THE AGE OF A BROTHER OR SISTER TO WHOM SHE REQUESTED NOTICE BE GIVEN AS A SPECIFIED RELATIVE INSTEAD OF TO ONE OF HER PARENTS, HER GUARDIAN, OR HER CUSTODIAN WAS NOT TWENTY–ONE YEARS OF AGE, OR TO BELIEVE THAT THE LAST KNOWN ADDRESS OF EITHER OF HER PARENTS, HER GUARDIAN, HER CUSTODIAN, OR A SPECIFIED BROTHER, SISTER, STEPPARENT, OR GRANDPARENT TO WHOM SHE REQUESTED NOTICE BE GIVEN WAS INCORRECT.

(2) IT IS AN AFFIRMATIVE DEFENSE TO A CHARGE UNDER THIS SECTION THAT COMPLIANCE WITH THE REQUIREMENTS OF THIS SECTION WAS NOT POSSIBLE BECAUSE AN IMMEDIATE THREAT OF SERIOUS RISK TO THE LIFE OR PHYSICAL HEALTH OF THE PREGNANT WOMAN FROM THE CONTINUATION OF HER PREGNANCY CREATED AN EMERGENCY NECESSITATING THE IMMEDIATE

PERFORMANCE OR INDUCEMENT OF AN ABORTION.

(D) Whoever violates this section is guilty of ~~consensual~~ UNLAWFUL abortion, a misdemeanor of the first degree ~~and for subsequent offenses.~~ IF THE OFFENDER PREVIOUSLY HAS BEEN CONVICTED OF OR PLEADED GUILTY TO A VIOLATION OF THIS SECTION, UNLAWFUL ABORTION IS a felony of the fourth degree.

(E) WHOEVER VIOLATES THIS SECTION is liable to the pregnant woman AND HER PARENTS, GUARDIAN, OR CUSTODIAN for civil compensatory and exemplary damages.

(F) AS USED IN THIS SECTION "UNEMANCIPATED" MEANS THAT A WOMAN WHO IS UNMARRIED AND UNDER EIGHTEEN YEARS OF AGE HAS NOT ENTERED THE ARMED SERVICES OF THE UNITED STATES, HAS NOT BECOME EMPLOYED AND SELF-SUBSISTING, OR HAS NOT OTHERWISE BECOME INDEPENDENT FROM THE CARE AND CONTROL OF HER PARENT, GUARDIAN, OR CUSTODIAN.

**4731.22 Grounds for refusal to grant and revocation of certificate; hearing and investigation; report [Eff. 3–24–86]**

(A) The state medical board, by a vote of not less than six of its members, may revoke or may refuse to grant a certificate to a person found by the board to have committed fraud in passing the examination or to have committed fraud, misrepresentation, or deception in applying for or securing any license or certificate issued by the board.

(B) The board, by a vote of not less than six members, shall, to the extent permitted by law, limit, revoke, or suspend a certificate, refuse to register or refuse to reinstate an applicant, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:

(1) Permitting one's name or one's certificate of registration to be used by a person, group, or corporation when the individual concerned is not actually directing the treatment given;

(2) Failure to use reasonable care discrimination in the administration of drugs, or failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease;

(3) Selling, prescribing, giving away, or administering drugs for other than legal and legitimate therapeutic purposes or conviction of violation of any federal or state law regulating the possession, distribution, or use of any drug;

(4) Wilfully betraying a professional confidence or engaging in the division of fees for referral of patients, or the receiving of a thing of value in return for a specific referral of a patient to utilize a particular service or business;

(5) Soliciting patients or publishing a false, fraudulent, deceptive, or misleading statement.

As used in this division, "false, fraudulent, deceptive, or misleading statement" means a statement that includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived.

(6) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established;

(7) Representing, with the purpose of obtaining compensation or other advantage for himself or for any other person, that an incurable disease or injury, or other incurable condition, can be permanently cured;

(8) The obtaining of, or attempting to obtain, money or anything of value by fraudulent misrepresentations in the course of practice;

(9) Conviction of a felony whether or not committed in the course of his practice;

(10) Conviction of a misdemeanor committed in the course of his practice;

(11) Violation of the conditions of limitation placed by the board upon a certificate to practice or violation of the conditions of limitation upon which a limited or temporary registration or certificate to practice is issued;

(12) Failure to pay license renewal fees specified in the chapter;

(13) Any division of fees or charges, or any agreement or arrangement to share fees or charges, made by any person licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery with any other person so licensed, or with any other person;

(14) The violation of any provision of a code of ethics of a national professional organization as specified in this division. "National professional organization" means the American medical association, the American osteopathic association, the American podiatry association, and such other national professional organizations as are determined, by rule, by the state medical board. The state medical board shall obtain and keep on file current copies of the codes of ethics of the various national professional organizations. The practitioner whose certificate is being suspended or revoked shall not be found to have violated any provision of a code of ethics of an organization not appropriate to his profession.

(15) Inability to practice according to acceptable and prevailing standards of care by reason of illness, excessive use of alcohol, excessive use of controlled substances, drugs, or chemicals, or as a result of a mental or physical condition. In enforcing this division, the board upon a showing of a possible violation, may compel any individual licensed or certified to practice by this chapter or who has applied for licensure or certification pursuant to this chapter to submit to a mental or physical examination, or both, as required by and at the expense of the board. Failure of any individual to submit to a mental or physical examination when directed constitutes an admission of the allegations against him unless the failure is due to circumstances beyond his control, and a default and final order may be entered without the taking of testimony or presentation of evidence. If the board finds a physician unable to practice because of the reasons set forth in this division, the board shall require such physician to submit to care, counselling, or treatment by physicians approved or designated by the board, as a condition for initial, continued, reinstated, or renewed licensure to practice. An individual licensed by this chapter affected under this section shall be afforded an opportunity to demonstrate to the board that he can resume his practice in compliance with acceptable and prevailing standards under the provisions of his certificate. For the purpose of this section, any individual licensed or certified to practice by this chapter accepts the privilege of practicing in this state, and by so doing or by the making and filing of a registration or application to practice in this state, shall be deemed to have given his consent to submit to a mental or physical examination when directed to do so in writing by the board, and to have waived all objections to the admissibility of testimony or examination reports that constitute a privileged communication.

(16) Violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of, or conspiring to violate, any provisions of this chapter or any rule promulgated by the board;

(17) The violation of any abortion rule adopted by the public health council pursuant to section 3701.341 of the Revised Code;

(18) The revocation or suspension by another state of a license or certificate to practice issued by the proper licensing authority of that state for an action that would also have been a violation of this chapter except for nonpayment of fees;

(19) THE VIOLATION OF SECTION 2919.12 OF THE REVISED CODE.

(C) Whenever any person holding a valid certificate issued pursuant to Chapter 4731 of the Revised Code, pleads guilty to or is convicted of a violation of Chapter 2907, 2925, or 3719 of the Revised Code or of any substantively comparable ordinance of a

municipal corporation in connection with his practice, the prosecutor in the case shall, on forms prescribed and furnished by the state medical board, promptly notify the board of the conviction. As used in this division, "prosecutor" has the same meaning as in section 2935.01 of the Revised Code.

Within thirty days of receipt of such information, the board shall conduct a hearing in accordance with Chapter 119 of the Revised Code to determine whether to suspend or revoke any certificate issued pursuant to Chapter 4731 of the Revised Code.

(D)(1) The board shall investigate evidence which appears to show that any person has violated any provision of this chapter, Chapter 4730 of the Revised Code, or rule of the board. For the purpose of investigation on matters concerning a possible violation of division (B)(3), (8), (9), (10), or (11) of this section, the board may administer oaths, order taking of depositions, issue subpoenas, compel the attendance of witnesses and the production of books, accounts, papers, records, documents, and testimony. The hearings and investigations of the board shall be considered civil actions for purposes of section 2305.251 of the Revised Code. In case of disobedience of any person with respect to an order or subpoena issued by the board, or on the refusal of a witness to testify to any matter regarding which he may be lawfully interrogated, a judge of the court of common pleas of the county in which the person resides, on application of the board, may compel obedience by attachment proceedings as for contempt, as in the case of disobedience with respect to the requirements of a subpoena issued from such court or a refusal to testify in such court. Each officer who serves such subpoena shall receive the same fees as a sheriff, and each witness who appears, in obedience to a subpoena, before the board, shall receive the fees and mileage provided for witnesses in civil cases in courts of common pleas. Any person may report to the board under oath any information such THAT THE person may have appearing THAT APPEARS to show a violation of any provision of this chapter, Chapter 4730 of the Revised Code,

or rule of the board. In the absence of bad faith, any person who reports such information or who testifies before the board in any adjudication hearing conducted under Chapter 119 of the Revised Code shall not be liable for civil damages as a result thereof.

Each complaint or allegation of a violation received by the board shall be assigned a case number and shall be recorded by the board. Investigations of alleged violations of this chapter, Chapter 4730 of the Revised Code, or any rule of the board shall be supervised by a board member selected on a rotating basis by the board. No member of the board who supervises the investigation of a case shall participate in further adjudication of the case.

The board shall conduct all investigations and proceedings in such a manner as to protect patient confidentiality. The board shall obtain the consent of the patient in the form of a written release signed by the patient or by an authorized representative of the patient before seeking access to medical record information concerning a patient for the purpose of any investigation or hearing, except that no such consent is required if there is reason to believe that there has been a violation of division (B)(3) of section 4731.22 of the Revised Code. The board shall not make public names or other identifying information about patients unless proper consent is given or a waiver of the patient privilege exists under division (B) of section 2317.02 of the Revised Code, except that no such consent or waiver is required if the board possesses reliable and substantial evidence that no bona fide physician-patient relationship exists.

(2) If any individual licensed or certified to practice or any association or society of individuals licensed or certified under this chapter believes that a violation of any provision of this chapter, or Chapter 4730 of the Revised Code has occurred, he shall report to the board the information upon which the belief is based. Any person or society who reports under this division and provides such information in good faith

shall not be subject to suit for civil damages as a result thereof.

(3) In absence of fraud or bad faith, neither the board nor any member, agent, representative, or employee thereof shall be held liable in damages to any person by reason of investigating or acting upon information presented to it pursuant to this chapter.

(4) On a quarterly basis the board shall prepare a report that documents the disposition of all cases during the preceding three months. The report shall contain the following information for each case with which the board has completed its activities:

(a) The case number assigned for the complaint or alleged violation pursuant to division (D)(1) of section 4731.22 of the Revised Code;

(b) The type of license or certificate to practice, if any, held by the individual against whom the complaint is directed;

(c) A description of the allegations contained in the complaint;

(d) The disposition of the case.

The report shall state how may cases are still pending, and shall be prepared in such a manner as to protect the identity of each person involved in each case. The report shall be a public record under section 149.-43 of the Revised Code.

(E) Irrespective of administrative remedies, the board may petition a court of common pleas for a temporary restraining order to suspend a physician's license. The court shall issue such an order if the board demonstrates that immediate and irreparable injury or loss to the public would result from the physician's continued practice of medicine.

(F) Any action taken by the board under division (B) of this section resulting in a suspension from practice shall be accompanied by a written statement of the conditions under which the certificate holder may be reinstated to practice. The board shall adopt rules governing conditions to be imposed for reinstatement. Reinstatement of a certificate suspended pursuant to division (B) of this section or surrendered to the board by its holder requires an affirmative vote of not less than six members of the board.

SECTION 2. That existing sections 149.43, 2305.11, 2919.12, and 4731.22 of the Revised Code are hereby repealed.